CARL EDWIN SNIDER v. JOSHUA WIMBERLY, Appellant.—No. 40344.— 209 S. W. (2d) 239.

Division One, February 9, 1948.

Rehearing Denied, March 8, 1948.

*Cornelius Roach, Daniel L. Brenner, Wilfred Wimmell* and *Fred L. Howard* for appellant.

*J. M. Loomis, Arthur N. Adams* and *Arthur N. Adams, Jr.,* for respondent.

[240] HYDE, J.—Action for false imprisonment based on plaintiff's arrest by the Kansas City police. Verdict for plaintiff for $10,000.00 damages. ($5000.00 actual and $5000.00 punitive.) Defendant has appealed.

Defendant contends that there was no substantial competent evidence to show that he caused plaintiff's arrest and that a verdict should have been directed for him. The occasion for the arrest was that defendant had stopped at his place of business (Superior Distributing Company, selling and servicing refrigerators and radios) about 11:30 P. M. on January 23, 1945, and discovered a man in his office who rushed at him, struck him and escaped by going down on the elevator and out a basement window. Defendant called the police, and his business associate Mr. H. C. Feingold, who arrived on the scene in a few minutes. At the time defendant discovered the prowler, the only light in the office and vestibule was from street lights and a neon sign and he said it was too dark for him to identify the man. Sergeant Raisbeck and Officer Cunningham of the burglary bureau took charge of the case. It seemed apparent from the course taken by the prowler to escape that he was some one familiar with the premises. There had also been previous thefts of refrigerators from the premises which had been reported to the police. Defendant, Feingold, and Raisbeck, all testified that the names of several employees or former employees were suggested who might answer defendant's description of the man he saw, as to height, size and appearance. Plaintiff's name was one of those suggested and plaintiff argues that, because of the subsequent events, it must have been the only one considered. Plaintiff had been employed by the Superior Distributing Company prior to July 1944 but was then operating an electrical service shop in Excelsior Springs.

Later that night, at Raisbeck's request, a State Highway patrolman went to plaintiff's apartment in Excelsior Springs (about 3:00 A. M.), asked him questions, examined his hands, and looked through his car. He also went to the apartment of Francis Overby there to check plaintiff's statement that he had visited there that night. The

494

patrolman reported that although it was a very cold night with a lot of frost, plaintiff's car "was not frosted over as the other cars . . . parked on the same street for any length of time." On the same day, about 9:30 P. M., the patrolman came back and asked plaintiff to go with him to North Kansas City where he was arrested by the Kansas City police and kept in jail until late the next night, about 24 hours. During that time he was put through the show-up room, photographed and finger printed and was accused of stealing refrigerators from the Superior Distributing Company. Before being released, plaintiff gave the police information about an employee of the company, who had tried to sell him refrigerators, which resulted in the conviction of that employee for the thefts. No one else was arrested or investigated, although two other employees were said to have been suggested as answering defendant's description of the man he saw. One of these lived in Kansas City and the other in a nearby Kansas suburb.

Plaintiff offered in evidence a police report on the case of "Snider, Carl Elvin" concerning "Disposition of Arrest" and [241] showing officers involved to be "Sgt. Raisbeck, Ennis, Cunningham." It was marked (in typewriting) "Approved by E. T. Kellerstress, Chief of Detectives" and "Copies furnished to Records B & RD.DD/1 G." It contained the following, under the heading "Details": "At 11:30 P. M. January 23, 1945, we received a radio call to investigate a reported burglary at the Superior Distributing Company, 2307 Pennway, Vi. 1150, and on arrival we met Mr. Joshua Wemberly, Bonner Springs, Missouri. He stated that he stopped by the office on his way home from town to use the rest room. While in the building, he was surprised by a prowler who had evidently entered the building by the front door after Mr. Wemberly had entered. The prowler hit Mr. Wemberly on the jaw and escaped by jumping through the basement window glass. *Mr. Wemberly stated that he thought the prowler was and ex-employee by the name of Carl Elvin Snider, who lives in Excelsior Springs, Missouri.* We had the Missouri State Highway Patrol pick up Snider at his home, 1-24-45 and bring him to K. C. where he was booked. After questioning him and checking on his story it was evident that he was visiting friends in Excelsior Springs, at the time in question. He was released 1-26-45." (Our italics.)

Defendant objected to the admission of the italicized part of the report on the grounds that Sgt. Raisbeck would testify that no such statement was made by defendant and that it was hearsay. Raisbeck said that the report was copied by a police stenographer from his longhand copy, which he said did not contain this purported statement of defendant. Neither of the other officers whose names appear on the report testified so there is no showing as to how it got into the report. Defendant relies on the ruling of inadmissibility

of statements in a similar report, considered by the Kansas City Court of Appeals in White v. Hasburgh, (Mo. App.), 124 S. W. (2d) 560; and also Martin v. Woodlea Inv. Co., 206 Mo. App. 33, 226 S. W. 650; Gass v. United Rys. Co., 232 S. W. 160; and State v. Tarwater, 293 Mo. 273, 239 S. W. 480. [See also Luhan v. Slavik, 185 N. Y. S. 878.] (It was not shown in this case, as in the White case, that this report was required by the rules of the Kansas City Police Department.) There is a well established exception to the hearsay rule admitting official reports made by an officer on the basis of his own personal investigation and knowledge, at least when required by statute, ordinance, rule or regulation. [5 Wigmore on Evidence (3rd Ed.) 512 et seq., Sec's. 1630-1638; 5 Wigmore 694, Sec. 1672; 20 Am. Jur. 861, Sec. 1023; 32 C. J. S. 477, Sec. 626, (police records) p. 495, Sec. 638.] If it appeared that this report would make a jury case for plaintiff and it seemed reasonable that a sufficient showing for its admissibility could be made, we would have discretion to remand the case for that purpose.

Defendant, however, contends that even if this police report is admissible as evidence to show that he did state to the officers "that he thought the prowler was an ex-employee by the name of Carl Elvin Snider", nevertheless, it does not show that defendant caused or instigated plaintiff's arrest; and that there is no other evidence to so show. The rule established by the authorities is that one is liable for a false arrest, not made by him or in his presence, if he directed, advised, countenanced, encouraged, or instigated it. [22 Am. Jur. 372, Sec. 32; 35 C. J. S. 527, Sec. 24; State ex rel. Fireman's Fund Ins. Co. v Trimble, 294 Mo. 615, 242 S. W. 934; Vimont v. S. S. Kresge Co., (Mo. App.), 291 S. W. 159; Newell on Malicious Prosecution 100, Sec. 2.] However, "one who merely states to an officer what he knows of a supposed offense, even though he expresses the opinion that there is ground for an arrest, 'but without making any charge, or requesting an arrest, does not thereby make himself liable in an action for illegal arrest.' " [Newell on Malicious Prosecution 211, Sec. 96; see also State ex rel. Fireman's Fund Ins. Co. v. Trimble, supra; Vimont v. S. S. Kresge Co., supra; Lark v. Bande, 4 Mo. App. 186; Wade v. Campbell, 211 Mo. App. 274, 243 S. W. 248; Richardson v. Empire Trust Co., 230 Mo. App. 580, 94 S. W. (2d) 966; Clark v. Whitaker, (Mo. App.), 173 S. W. (2d) 586; 22 Am. Jur. 375, Sec. 33; 35 C. J. S. 529, Sec. 25.] While "one not originally responsible for a false arrest or detention may pursue a course of conduct [242] which amounts to an adoption or ratification of the wrongful act, so as to render him liable therefor", (35 C. J. S. 552, Sec. 39) there is no such contention here.

Plaintiff says: "Defendant Wimberly, without probable cause, furnished the police with wrong information, thus implicating an innocent young man who had nothing whatever to do with the assault

or theft. . . . There was nothing in this situation that involved any discretion on the part of the police—they acted on the basis of misinformation given them by defendant Wimberly. Wimberly clearly then was the instigator of the arrest of Snider.'' We cannot agree with this conclusion.

We have said that ''instigate'' means ''to stimulate or goad to an action, especially a bad action''; and that ''one of its synonyms is 'abet' which means in law 'to aid, promote or encourage the commission of an offense' ''. [State v. Fraker, 148 Mo. 143, l. c. 165, 49 S. W. 1017; this definition has been followed in a malicious prosecution case, Hughes v. Van Bruggen, (N. M.), 105 Pac. (2d) 494.] The applicable definition of ''countenance'' is given by Webster's New International Dictionary, 2d. Ed., as ''to encourage, favor, approve'' and its synonyms are given as ''sanction, endorse, support.'' [See discussion of this term in Vimont v. S. S. Kresge Co., supra.] Thus it requires something more than only furnishing wrong information, as the above authorities demonstrate, to amount to instigating, countenancing, advising or directing an arrest.

Here, even according to the police report, defendant did not say that plaintiff was the prowler but only said he *thought* plaintiff was the prowler. By this statement, defendant did not positively identify plaintiff as the prowler or actually make a charge of any offense against plaintiff, or in any way tell the police what to do about the matter. Therefore, plaintiff's contention, that ''there was nothing in this situation that involved any discretion on the part of the police'' is fallacious. Considered most favorably to plaintiff, we think this statement was in the nature of information calling for their investigation of what defendant *thought* before taking action and was not a request for his arrest. It is conceded that an investigation was made before there was any decision to arrest plaintiff and that the arrest was made more than 18 hours after this investigation. Furthermore, Sgt. Raisbeck testified on cross-examination that defendant did not ''ever suggest, advise, direct or order'' the arrest of plaintiff; that he called the Highway Patrol to investigate, from the police station, after he had left defendant; and that he later asked the patrolman to bring plaintiff to North Kansas City after this investigation had been made and reported to him. There is no substantial evidence that defendant had any part in the decision to make the arrest or even knew of it. Plaintiff argues the circumstances in connection with his arrest as hereinabove stated but we hold that these are not sufficient to show that plaintiff was responsible for it. So far as appears from the evidence, the decision to make the arrest and to hold plaintiff was that of the police as a result of their own investigation.

The judgment is reversed. All concur.