**Nels John DILLBERG, Plaintiff—Appellant,**

v.

**COUNTY OF KITSAP; Kitsap County Sheriff's Department; Kitsap County Prosecutor's Office; Kitsap County Corrections Center, Steve Boyer, Sheriff; Mike Davis, Sheriff; Larry Bertholf; Ron Zude; Steve Sipple; Chris Casad; Ione George; Chris Casad; Julia Ruggenberg, Defendants—Appellees,**

**and**

**Melanie Roach, Defendant.**

No. 02–35565.

D.C. No. CV–01–05064–JKA.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 2003.

Decided Sept. 12, 2003.

Clayton Ernest Longacre, P. Thomas Adams, Jr., Longacre and Adams, Port Orchard, WA, for Plaintiff–Appellant.

John S. Dolese, Kitsap County Prosecutor's Office, Port Orchard, WA, Talis M. Abolins, Olympia, WA, Richard William Walker, Law Office of Richard William Walker, Tacoma, WA, for Defendant–Appellee.

Before ALARCÓN, GOULD, and CLIFTON, Circuit Judges.

### MEMORANDUM *

Nells Dillberg was arrested and prosecuted for attempted solicitation of murder. The charge was dropped when it was later determined by the state Superior Court that there was no such crime in Washington. Dillberg then sued Defendants in district court under 42 U.S.C. § 1983 and state law. The parties agreed to proceed before a magistrate judge, who granted summary judgment for Defendants on all claims. Dillberg timely appealed. We affirm, although in part for reasons different than those relied on by the district court.

We recite the facts only as necessary. We review the grant of summary judgment *de novo,* viewing the evidence in the light most favorable to Dillberg. *See Christie v. Iopa,* 176 F.3d 1231, 1234 (9th Cir.1999).

#### A. *Absolute Immunity*

■ Casad and George enjoy absolute immunity under § 1983 for recommending a bail amount of $500,000. *See Burns v. County of King,* 883 F.2d 819, 824 (9th Cir.1989)(citing *Lerwill v. Joslin,* 712 F.2d 435, 438 (10th Cir.1983)).

■ They are not absolutely immune, however, for advising Deputy Zude that Dillberg could be arrested for attempted solicitation of murder. Absolute immunity does not extend "to the prosecutorial function of giving legal advice to the police." *Burns v. Reed,* 500 U.S. 478, 496, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). *Burns* involved in pertinent part a prosecutor's advice to police that they "probably had probable cause" to arrest. *Id.* at 482. As

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

in our case, the legal advice in *Burns* led directly to an arrest and prosecution. *See id.* at 482–83. The Supreme Court expressly rejected the argument that "giving legal advice is related to a prosecutor's role[ ] in screening cases for prosecution." *Id.* at 495. Accordingly, Casad and George enjoy no absolute immunity for their legal advice regarding probable cause.

## B. *Federal Qualified Immunity*

The individual county defendants (including Casad and George) are entitled to protection from the § 1983 claims under the doctrine of qualified immunity. "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir.2001)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). We first ask the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Our inquiry ends if the allegations establish no constitutional violation, but if they do, then we next ask whether the right violated was clearly established. *See id.* "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202.

■ Dillberg's arrest for attempted solicitation of murder violated no constitutional right because, as the state court determined, there was probable cause to arrest him for felony harassment. "Under the closely related offense doctrine, probable cause may exist for an arrest for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested." *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 734 (9th Cir.2003)(internal quotation marks and citation omitted). The same conduct underlay both the attempted solicitation of murder and felony harassment offenses, making the arrest constitutionally permissible.

■ We conclude, however, taking the facts alleged in the light most favorable to Dillberg, that Dillberg's incarceration for 75 days *after* he had been charged only with attempted solicitation of murder (and not with felony harassment) violated Dillberg's constitutional rights. Although the arrest was constitutionally sanctioned under the closely-related-offense doctrine, the individual county defendants have cited no authority indicating that the doctrine immunizes all subsequent periods of incarceration when the arrestee is ultimately charged not with the closely-related offense, but with the original (in this case, nonexistent) offense for which he was arrested.

■ Nevertheless, qualified immunity is available for any such constitutional violation because Dillberg's right not to be prosecuted for attempted solicitation of murder was not clearly established. The Washington Revised Code's delineation of only three categories of anticipatory offenses (attempt, solicitation, and conspiracy) does not clearly indicate a legislative intent not to criminalize attempted solicitation. Attempted solicitation of murder could reasonably fall under the rubric of an "attempt," as an attempt to commit the crime of soliciting murder.[1] Although that

---

1. For that reason, Dillberg's other arguments invoking the fact that there is no legislatively-

would constitute stacking of anticipatory offenses, Dillberg has identified no statute prohibiting such stacking.[2] To the contrary, the state court concluded that Casad and George's construction of the anticipatory offense statutes was reasonable, and described the statutes as ambiguous.

The statutory definition of "solicitation," which supplanted the common law definition, manifests a legislative intent to require payment or an offer of payment as an element of solicitation, but evinces no intent to preclude a separate, presumably lesser offense of attempted solicitation. *Compare* Wash. Rev.Code § 9A.28.030(1) *with State v. Gay,* 4 Wash.App. 834, 486 P.2d 341, 345 (1971).

Finally, the disparity of holdings from other states as to whether anticipatory offenses could be stacked supports our conclusion that Dillberg's right not to be prosecuted for attempted solicitation of murder was not clearly established. *Compare, e.g., State v. Sexton,* 232 Kan. 539, 657 P.2d 43 (1983)(rejecting stacking) *with People v. Saephanh,* 80 Cal.App.4th 451, 94 Cal.Rptr.2d 910 (2000)(allowing stacking).

## C. *State Qualified Immunity*

The individual county defendants are immune from the state law claims under the test for state qualified immunity. In Washington, "an officer has a qualified immunity from liability for false arrest and imprisonment when the officer (1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably." *Guffey v. State,* 103 Wash.2d 144, 690 P.2d 1163, 1167 (1984), *overruled on other grounds by Savage v. State,* 127 Wash.2d

434, 899 P.2d 1270, 1273 n. 3 (1995); *see also Staats v. Brown,* 139 Wash.2d 757, 991 P.2d 615, 627 (2000)(stating that the *Guffey* test remains valid).

The individual county defendants acted pursuant to statutes criminalizing attempt, solicitation, and murder, and there is no suggestion that they violated statutory or other procedure. As explained above, their erroneous belief that attempted solicitation of murder was a crime was not unreasonable. The record reflects "no knowledge or notice of any claimed invalidity" of the stacking of anticipatory offenses. *Guffey,* 690 P.2d at 1167–68. As such, the individual county defendants enjoy qualified immunity from the state claims.

*Staats* compels no different result. Unlike the defendant in *Staats,* who was denied immunity because he had directly violated a statute, the individual county defendants violated no statute, as no statute prohibited stacking. Although *Staats,* 991 P.2d at 627, noted that warrantless arrests are *per se* unreasonable subject to certain exceptions, the individual county defendants enjoy qualified immunity for Dillberg's warrantless arrest because they reasonably believed he had committed a felony and they acted in good faith on that belief. *See Guffey,* 690 P.2d at 1166.

## D. *Municipal Liability*

Municipalities are liable under § 1983 "only when action pursuant to official municipal policy of some nature caused a constitutional tort." *Christie,* 176 F.3d at 1235 (internal quotation marks and citation omitted). As we concluded above, there was no constitutional violation as far

---

created offense of "attempted solicitation" (citing Wash. Rev.Code §§ 9A.28.010 & 9.94A.510(2)) fail.

**2.** We do not read Wash. Rev.Code § 9A.28.020(1) as precluding an attempted solicitation offense, as that statute in no way indicates that solicitation is not a "specific crime."

as Dillberg's arrest goes. Nor is there municipal liability for any constitutional violation arising from Dillberg's post-arraignment incarceration because there is no evidence that "the constitutional violation occurred pursuant to a 'longstanding practice or custom.'" *Id.* (citation omitted).

The only evidence Dillberg offers of a municipal policy or custom is that no corrective measure was taken against the individual county defendants for their actions. Although this may support municipal liability in some situations, *see Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir.2001)(citing *Larez v. City of Los Angeles,* 946 F.2d 630, 647 (9th Cir.1991)), our case is distinguishable from *Gomez* and *Larez* because those cases involved multiple instances of known constitutional violations that went unredressed. Our case, by contrast, marked the first time that anybody had been arrested in Washington for attempted solicitation, as far as anyone involved in this matter knows. As we recognized in *Christie,* "[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." 176 F.3d at 1235.

### E. *Ruggenberg*

 Ruggenberg is not liable under § 1983 because she did not act "under color of state law." She merely served as a complaining witness, which does not convert her into a state actor. *See Collins v. Womancare,* 878 F.2d 1145, 1155 (9th Cir. 1989). Nothing in the record indicates that Ruggenberg engaged in joint action with any state actor so as to create liability under § 1983. *See id.* at 1154.

---

\* This panel unanimously finds this case suitable for decision without oral argument. See

Ruggenberg was also entitled to summary judgment on the claim for false arrest. Before the decision to arrest Dillberg had been made, Ruggenberg merely detailed her version of the facts to Deputy Zude without asking that Dillberg be arrested. This does not create liability for false arrest under Washington law. *See McCord v. Tielsch,* 14 Wash.App. 564, 544 P.2d 56, 58 (1975). Although Ruggenberg later asked that Dillberg be arrested, that did not occur until after Sgt. Sipple had already set out to effect the arrest.

AFFIRMED.