ATTORNEY FOR APPELLANT
Christopher J. Wheeler
Angola, Indiana

ATTORNEYS FOR APPELLEES
Claire Konopa Aigotti
South Bend, Indiana

Edward W. Hearn
Highland, Indiana

In the

Indiana Supreme Court

No. 76S04-0604-CV-138

JASON W. HOLCOMB,

*Appellant (Plaintiff below)*,

v.

WALTER'S DIMMICK PETROLEUM, INC., AND
GLYNELL KUHN,

*Appellees (Defendants below)*.

Appeal from the Steuben Circuit Court, No. 76C01-0305-CT-245
The Honorable Allen N. Wheat, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 76A04-0410-CV-572

**December 13, 2006**

**Sullivan, Justice.**


A gas station clerk reported to police the make and license plate number of a vehicle she said had driven off without paying for gasoline. After charges against the owner of this vehicle were dismissed, the owner sued the clerk for false arrest, false imprisonment, defamation, and abuse of process. A qualified privilege available for communications to law enforcement officers protects the clerk in these circumstances.

## Background

On December 3, 2002, Glynell Kuhn, an employee at the "Spee-D-Mart" gas station owned by Walter's Dimmick Petroleum, Inc. ("Dimmick"), reported to the Steuben County police that a customer operating a green Jeep with license plate number 680670L had driven off without paying for his gasoline. Jason Holcomb, who owned a green Jeep with license plate number 680670L, was arrested and charged with the reported gasoline theft. The charges against Holcomb were eventually dismissed. Holcomb then sued Kuhn and, on the theory of respondeat superior, Dimmick, for false arrest, false imprisonment, defamation, and abuse of process.

The trial court granted summary judgment in favor of Kuhn and Dimmick, holding that as a matter of law, Kuhn's statements were protected by a qualified privilege that attaches to reports to law enforcement.[1] In a memorandum opinion, a divided panel of the Court of Appeals reversed on the basis that genuine issues of material fact precluded the entry of summary judgment.[2] Holcomb v. Walter's Dimmick Petroleum Inc., No. 76A04-0410-CV-572, slip. op., 838 N.E.2d 562 (Ind. Ct. App. 2005) (table). Kuhn and Dimmick petitioned to, and we granted, transfer. Holcomb v. Walter's Dimmick Petroleum Inc., 855 N.E.2d 1005 (Ind. 2006) (table).

## Discussion

A qualified privilege protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." Bals v. Verduzco, 600 N.E.2d 1353, 1356 (Ind. 1992). In the absence of a factual dispute, the applicability of the privilege is a question of law to be determined

---

[1] See Health & Hosp. Corp. of Marion Co. v. Gaither, 272 Ind. 251, 397 N.E.2d 589, 595 (1979) (noting "a judgment in favor of an employee requires judgment in favor of his employer when the employer's liability is predicated solely upon the acts of said employee").

[2] Holcomb also appealed the trial court's striking a surveillance videotape that he had designated as material for consideration in opposition to summary judgment. The Court of Appeals found that the trial court did not abuse its discretion in striking Holcomb's designation of the videotape because Holcomb failed to tender and lay a foundation for the videotape. We summarily affirm the Court of Appeals on this issue. Ind. Appellate Rule 58(A).

by the court.  Id.  To promote society's interest in having crimes reported, communications to law enforcement are protected by this qualified privilege.  Conn v. Paul Harris Stores Inc., 439 N.E.2d 195, 200 (Ind. Ct. App. 1982), trans. denied.

A communication otherwise privileged can lose its privileged status – it is for this reason the privilege is said to be "qualified" – if the plaintiff meets the burden of proving that the privilege has been abused.  Bals, 600 N.E.2d at 1356.  Abuse of the privilege is proven by showing that: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth."  Id.

The Court of Appeals in Elliott v. Roach gives this helpful explanation:

> As the phrase "qualified or conditional privilege" suggests, such privilege does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege.  In an appropriate case, a trier of fact may determine the privilege was abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said.  And although the term "malice" is frequently applied in viewing such acts, it appears "the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which privilege exists."

409 N.E.2d 661, 673 (Ind. Ct. App. 1980) (citations omitted).

In the present case, Holcomb does not contest the applicability of the privilege to his claims.  Nor does he contend the privilege was abused either (1) because Kuhn was primarily motivated by ill will towards him in making the statement or (2) because there was excessive publication of the defamatory statement.  Holcomb's claim is that Kuhn abused the privilege because her statement to the police was made without belief or grounds for belief in its truth.

This Court observed many years ago:

3

> If one directs the attention of an officer to what he supposes to be a breach of the peace, and the officer, without other direction, arrests the offender on his own responsibility for what he assumes to be an offence committed in his presence, the person who did nothing more than to communicate the facts to the officer is not liable for false imprisonment, even though the arrest was unlawful.

Veneman v. Jones, 118 Ind. 41, 20 N.E. 644, 645-46 (1889) (citation omitted).  There is substantial authority for this proposition, as illustrated by this quotation from a State of Washington case that the Court of Appeals included in its opinion in Conn v. Paul Harris Stores:

> Liability will not be imposed when the defendant does nothing more than detail his version of the facts to a policeman and ask for his assistance, leaving it to the officer to determine what is the appropriate response, at least where his representation of the facts does not prevent the intelligent exercise of the officer's discretion.  Accord, Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239 (1948); Davis v. Weil Clothing Co., 367 S.W.2d 19 (Mo. App. 1963); Jensen v. Barnett, 178 Neb. 429, 134 N.W.2d 53 (1965); Pearson v. Galvin, 253 Or. 331, 454 P.2d 638 (1969).  See also 32 Am. Jur. 2d False Imprisonment § 35 (1967); Annot., 21 A.L.R.2d 643 (1952); 1 F. Harper & F. James, The Law of Torts §§ 3.18, 4.11 (1956); Restatement (Second) of Torts § 45A (1965).  This rule and its application are founded on public policy, not semantics.  As the court explained in Vimont v. S. S. Kresge Co., 291 S.W. 159, 160 (Mo. App. 1927), a case cited as authority for . . . Smith v. Drew, (1933) 175 Wash. 11, 26 P.2d 1040,
>
> > To hold to the contrary would entirely destroy the right of the humble citizen, to whom the patrolman on the beat or the town marshal or village constable represents the majesty of the law and to whom for many reasons the advice of counsel may be unavailable, to tell his troubles and difficulties to such officer, and to trust to the power and discretion of the legally constituted authorities to secure for him the rights which the law guarantees him.
>
> > Accord, Turner v. Mellon, 41 Cal.2d 45, 257 P.2d 15, 17-18 (1953).

Conn, 439 N.E.2d at 198-99 (quoting McCord v. Tielsch, 14 Wash. App. 564, 544 P.2d 56, 58 (1975)).

In this case, Kuhn "[did] nothing more than detail [her] version of the facts to a policeman and ask for his assistance, leaving it to the officer to determine what is the appropriate response."  Id.  As set forth supra, Kuhn reported to the police that a customer operating a green

Jeep with license plate number 680670L had driven off without paying for his gasoline. When presented with the driver's license photo of Holcomb, Kuhn identified him as the same person she saw drive off without paying for his gasoline. That was the entire extent of her involvement in the matter. A person who does no more than this does not abuse the privilege. To use the helpful formulation of the Court of Appeals in Elliott v. Roach, such behavior does not "go[ ] beyond the scope of the purposes for which privilege exists," 409 N.E.2d at 673, one of those purposes being enhanced public safety by facilitating the investigation of suspected criminal activity.[3] To hold otherwise would make persons who suspect criminal activity reluctant to provide specific (or even speculative) information to law enforcement because of the risk of exposing themselves to civil liability.

In this case, the Court of Appeals took the position that there was a genuine issue of material fact as to whether or not the statements Kuhn made to the police were made without belief or grounds for belief in their truth. This is also the position taken by the dissent here. Specifically, they say that there are at least two factual possibilities that preclude summary judgment: first, that "Kuhn intentionally and falsely reported Holcomb as the culprit," or second, that Kuhn made her report "with reckless disregard of the truth."

Although they are logical possibilities, we do not think that they are supported by the record. Holcomb presents no evidence suggesting that either possibility occurred. All he offers is that he was wrongly identified. If that were enough, it would swallow the privilege because it is always possible that a defendant intentionally and maliciously targeted a randomly selected victim for false reporting. Overcoming the privilege requires some evidence that this is in fact the case, and here there is none. And a reckless disregard of the truth is not a reasonable conclusion, given that Kuhn described Holcomb's physical appearance, vehicle make and color, and license plate with precision. That is too much of a coincidence to attribute to recklessness. Accordingly, summary judgment was appropriately granted.

---

[3] Of course, law enforcement has certain responsibilities once such information is received, the scope of which this Court is now considering in Row v. Holt, 834 N.E.2d 1074 (Ind. Ct. App. 2005), transfer granted, No. 1501-0606-CV-239, 2006 Ind. LEXIS 565 (June 28, 2006).

## Conclusion

We affirm the judgment of the trial court with respect to its decision to grant summary judgment in favor of Kuhn and Dimmick. We summarily affirm the decision of the Court of Appeals on the issue referred to in footnote 2.

Shepard, C.J., and Boehm, J., concur. Dickson, J., dissents with separate opinion in which Rucker, J., joins.

**Dickson, Justice, dissenting.**

As the parties moving for summary judgment, it was the defendants' burden to establish the absence of any genuine issue of material fact on a determinative issue, specifically here: whether Kuhn exceeded the privilege by making her statement to police without belief, or grounds for belief, in its truth.

Evidence before the trial court on summary judgment included Kuhn's assertion that she recognized Holcomb as a regular customer (contrary to Holcomb's claim that he had never before been in the store or the county), store records and receipts indicating that the gasoline allegedly stolen by Holcomb was not pumped until after Holcomb drove away, and facts suggesting that Kuhn did not contact police until an hour after the alleged theft of gasoline.

Such evidence raises at least two factual possibilities that preclude summary judgment: (1) Kuhn's report to police was made with reckless disregard of the truth, or (2) the stolen gasoline was mistakenly or intentionally pumped by Kuhn or by a third party, and Kuhn intentionally and falsely reported Holcomb as the culprit. In either event, Kuhn would have exceeded the privilege by making her statement to police without belief, or grounds for belief, in its truth.

Because of the existence of genuine issues of material fact, I believe that the trial court incorrectly granted the defendant's motion for summary judgment. For these reasons, I respectfully dissent.

Rucker, J., concurs.